IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| AVERY EVANS, M.D., | ) | |
| | ) | Civil Action No. 3:19CV00006 |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | By: Hon. Glen E. Conrad |
| STANDARD INSURANCE COMPANY, | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

In this action brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, Dr. Avery Evans contends that Standard Insurance Company ("Standard") improperly denied his claim for long-term disability ("LTD") benefits under a group policy issued by Standard. In particular, Dr. Evans argues that Standard erred in interpreting and applying the policy's "Own Occupation" definition of disability. The case is presently before the court on the parties' cross-motions for summary judgment. For the following reasons, the court will grant Standard's motion and deny Dr. Evans' motion.

## Background

### I. The Policy

Dr. Evans is a physician employee of the University of Virginia Physicians Group ("Physicians Group"), through which he is insured under a group LTD policy issued by Standard (the "Policy"). The Policy gives Standard "full and exclusive authority" to administer claims, interpret the Policy, and determine entitlement to LTD benefits. Administrative Record ("AR") 000036.[1]

---
[1] Citations to the administrative record omit the Bates prefix "STND 19-04557."

The Policy pays LTD benefits to covered employees who "become Disabled while insured under the . . . Policy." AR 000014. The instant dispute arises from the Policy's "Own Occupation" definition of disability. The Policy states that "[y]ou are Disabled if . . . , as a result of Physical Disease, Injury, Pregnancy, or Mental Disorder, you are unable to perform with reasonable continuity at least one Material Duty of your Own Occupation." AR 000017. The term "Own Occupation" is defined, in turn, as follows:

> . . . If your Own Occupation involves the rendering of professional services and you are required to have a professional or occupational license in order to work, your Own Occupation is as broad as the scope of your license.
>
> However, if your Own Occupation is medical doctor or dentist, . . . we will consider your Own Occupation to be the one general or sub-specialty in which you are board certified to practice for which there is a specialty or sub-specialty recognized by the American Board of Medical Specialties or American Dental Association, provided you have earned at least 60% of your gross professional service fee income in your specialty or sub-specialty during the 24 months immediately before you became Disabled. If the sub-specialty in which you are practicing is not recognized by the American Board of Medical Specialties or American Dental Association, you will be considered practicing in the general specialty category. If your Own Occupation is the one medical specialty in which you are board certified to practice, is your own specialty of dental practice, or if the sub-specialty in which practice is considered a general specialty because it is not board certified, you will no longer be Disabled when your Work Earnings from another occupation exceed 100% of your indexed Predisability Earnings.

AR 000017–18.

## II. Dr. Evans' Claim for LTD Benefits

In 1993, Dr. Evans was awarded a specialty certificate in "Diagnostic Radiology" by the American Board of Radiology ("ABR"). AR 000192. The ABR is one of twenty-four member

2

boards making up the American Board of Medical Specialties ("ABMS"). The member boards issue specialty and subspecialty certificates approved by the ABMS.[2]

Dr. Evans has been employed by the Physicians Group since 2004. At the time he applied for LTD benefits, Dr. Evans' "clinical work at the University of Virginia was entirely in the field of Interventional Radiology," including the performance of neurointerventional surgical procedures. Evans Decl. ¶ 2, ECF No. 19-1; see also AR 000127.

In May of 2016, Dr. Evans was examined by a primary care physician, Dr. Daniel Becker, after experiencing altitude sickness and shortness of breath while snowboarding in Colorado. Dr. Becker diagnosed Dr. Evans with normocytic anemia and referred him to University of Virginia Health System's hematology department. On June 20, 2016, Dr. Hillary Maitland performed a bone marrow biopsy, which "did not reveal any evidence of malignancy" or "elucidate a cause for Dr. Evans' normocytic anemia." AR 000545. However, Dr. Maitland noted that examination records "suggest that exposure to x rays is the cause of the anemia and that ending exposure to x rays will be necessary to prevent future damage." Id.

In May of 2017, Dr. Evans reported experiencing another episode of altitude sickness while snowboarding. He advised Dr. Chris Rembold, a cardiologist, that he was "giving up skiing at altitude . . . and . . . instead taking up kite-sailing." AR 000730. Dr. Evans also reported that he was "[s]till exercising one hour every day with weights, elliptical, and yoga." Id.

---

[2] In 1993, when Dr. Evans obtained his board certification, the ABR awarded specialty certificates in Diagnostic Radiology, Radiation Oncology, and Medical Physics. See ABMS Board Certification Report 2015–2016 at 7, https://www.abms.org/media/131568/2015-16-abmscertreport.pdf. In 1994, the ABR began issuing a subspecialty certificate in Vascular and Interventional Radiology. Id. at 10. In 2017, a new specialty certificate in Interventional Radiology and Diagnostic Radiology was issued for the first time by the ABR, which replaced the subspecialty certificate in Vascular and Interventional Radiology. See ABMS Board Certification Report 2017–2018 at 6, https://www.abms.org/media/257802/abms-board-certification-report-2017-2018.pdf. The ABR also continues to offer a certificate in Diagnostic Radiology alone. Id.

Dr. Evans returned to Dr. Becker in October of 2017 with complaints of pain while biking and playing tennis. Dr. Becker reported that the plaintiff also continued to experience anemia, which he suspected to be "related to radiation exposure from years of long [Interventional Radiology] procedures." AR 000077. Dr. Becker noted that Dr. Evans would "have to consider early retirement" if his hematocrit levels did not improve. Id. On November 20, 2017, Dr. Maitland performed a bone marrow biopsy and aspiration, which demonstrated "an overall normocellular marrow with orderly trilineage hematopoiesis and no increase in blasts." AR 000963.

In late 2017, Dr. Evans submitted a claim for LTD benefits under the Policy. On December 4, 2017, Dr. Becker completed an Attending Physician's Statement on Dr. Evans' behalf. Dr. Becker identified the plaintiff's diagnosis as "chronic anemia due to radiation exposure." AR 000074. He indicated that Dr. Evans must "avoid radiation exposure at work," and that it would be "too risky" for Dr. Evans to return to the radiology suite. Id. Dr. Becker also sent Standard an undated letter on behalf of Dr. Evans, in which he opined that Dr. Evans' anemia is "more likely than not . . . related to chronic exposure to radiation, an unfortunate but unavoidable consequence of performing his job." AR 000075.

Dr. Maitland also submitted a letter in support of Dr. Evans' claim for LTD benefits, in which she reported that the "most likely explanation [for] Dr. Evans' ongoing anemia is related to his chronic exposure to radiation." AR 000070. Dr. Maitland noted that continued exposure to radiation would increase Dr. Evans' "risk for progression to aplastic anemia or hematologic malignancy such as leukemia." Id. Dr. Maitland opined that "Dr. Evans is permanently disabled as a Neurointerventional surgeon," since "he cannot perform his duties without exposure to x

4

rays." AR 000071.

At the time of his alleged disability, Dr. Evans was earning $265,000 per year as an employee of the Physicians Group. Dr. Evans is still employed by the Physicians Group and his salary has not changed. He remains certified in Diagnostic Radiology, and he continues to work within his board certification in a non-interventional capacity. See AR 000130 (reporting that "Dr. Evans ceased to perform interventional radiology procedures as of November 8, 2017," but continues to work "without performing procedures that would expose him to radiation"); see also https://uvahealth.com/findadoctor/profile/avery-j-evans (last visited Mar. 26, 2020) (noting that Dr. Evans is certified in Diagnostic Radiology and works in the Department of Radiology and Medical Imaging).

### III. Standard's Initial Denial of Dr. Evans' Claim

By letter dated January 25, 2018, Standard advised Dr. Evans that it was investigating his eligibility for LTD benefits under the Policy.[3] The letter explained that Dr. Evans' claim file would be reviewed by a physician consultant, and that Standard would need to obtain documentation necessary to determine his specialty in the practice of medicine.

On April 24, 2018, Paul Kangas, a Vocational Case Manager, prepared a memorandum analyzing Dr. Evans' "Own Occupation as defined by [the Policy]." AR 000377. According to the memorandum, Mr. Kangas reviewed vocational information from the University of Virginia and the Physicians Group. He also researched Dr. Evans' medical license and board certification. Mr. Kangas' research revealed that Dr. Evans is "licensed as an M.D." and "board certified by the

---

[3] The same letter advised Dr. Evans that Standard was reviewing Dr. Evans' claim for LTD benefits under a separate group policy held by the University of Virginia (the "UVA Policy"). Standard subsequently denied that claim, and Dr. Evans did not appeal any determination under the UVA Policy. In the instant action, Dr. Evans concedes that the UVA Policy is not at issue.

American Board of Radiology in Diagnostic Radiology – General with an Active and Lifetime status."[4] AR 000378. Mr. Kangas also reviewed Dr. Evans' Current Procedural Terminology ("CPT") codes and other billing records, and determined that "well over 60% of his professional charges were associated with interventional radiology," which is "not [Dr. Evans'] board certified specialty." Id.

By letter dated April 25, 2018, Standard denied Dr. Evans' claim for LTD benefits. Standard first explained its determination regarding Dr. Evans' "Own Occupation":

> Your claim file was referred to a Vocational Case Manager (VCM) for a review of your occupation and to determine what that occupation requires. Information in your claim file reflects that you were practicing as a radiologist. We note that although your CPT codes demonstrate that you were performing interventional radiology, the American Board of Medical Specialties indicates that your board certification is in general, diagnostic radiology only.

AR 000241. Accordingly, Standard explained that its eligibility analysis focused on Dr. Evans' "ability to perform at least one Material Duty of the specialty of Diagnostic Radiology." Id.

Standard then explained its determination regarding Dr. Evans' ability to perform the material duties of a "diagnostic radiologist." AR 000242–244. Standard acknowledged that Dr. Evans had been diagnosed with chronic anemia, and that Dr. Maitland had opined that further radiation exposure would place Dr. Evans at risk for progression to aplastic anemia or leukemia. Standard also noted, however, that additional medical records reflected that Dr. Evans had "otherwise been well," and that he continued to "exercise daily" and "work[] full-time, but in a non-clinical capacity." AR 000243. Standard ultimately determined that Dr. Evans' decision to

---

[4] Terms such as "Diagnostic Radiology," "Interventional Radiology," "board certified," and "subspecialty" are inconsistently capitalized and/or hyphenated in the administrative record. The court quotes from the documents in the administrative record as written.

stop performing interventional procedures did not "in itself constitute disability as [the Policy] defines that term." Id. Standard explained as follows:

> Please note that we have identified your [Own Occupation] . . . under the UVA Physicians Group plan to be diagnostic radiologist. You may feel that you are no longer able to perform the work activities of an interventional radiologist, but neither the general occupation of physician, nor the occupation of diagnostic radiologist, requires undue exposure to radiation in the course of performing their material duties. Indeed, even though you have stopped interventional procedures, we may reasonably conclude that, as you continue to work as a radiologist without those procedures, you are continuing to perform the material duties of physician and diagnostic radiologist.

AR 000244.

### IV. Dr. Evans' Appeal

Dr. Evans, through counsel, appealed the adverse decision by letter dated October 26, 2018. Dr. Evans emphasized that he stopped performing interventional procedures on November 8, 2017, based upon the recommendations of his treating physicians. Dr. Evans argued that Standard erred by evaluating his eligibility for LTD benefits as a "general diagnostic radiologist." AR 000131. Dr. Evans asserted that his claim "should have been evaluated for the occupation of Interventional Radiologist." Id. Dr. Evans reported being "Board Certified in Diagnostic Radiology, which includes Interventional Radiology." Id. To support this contention, Dr. Evans submitted an August 15, 2018 "Verification of Certification and Maintenance of Certification" from the ABR. The verification form indicates that Dr. Evans maintains a valid certificate in "Diagnostic Radiology." AR 000192. The form also contains the following notation: "Diplomate was certified June 10, 1993 in Diagnostic Radiology, which includes Interventional Radiology." Id.

Dr. Evans asserted that "Interventional Radiology was considered a subspecialty of Diagnostic Radiology" at the time he was certified in 1993, and that "the American Board of

Medical Specialties elevated interventional radiology . . . to a primary medical specialty" in 2012. AR 000131 at n.15; see also AR 000132 ("Interventional Radiology is now recognized as a separate medical specialty (it was not when Dr. Evans was Board Certified in 1993)."). Dr. Evans cited to an article published by HealthLeaders Media in 2014, which explained that a new dual certificate in Interventional Radiology and Diagnostic Radiology would replace the existing subspecialty certificate in Vascular and Interventional Radiology.[5] AR 000199. Dr. Evans emphasized that more than 60% of his professional charges were associated with interventional procedures. AR 000132. Dr. Evans further argued that his ability to continue working outside the specialty of Interventional Radiology did not render him ineligible for LTD benefits.

V. **Standard's Denial of Dr. Evans' Appeal**

On December 3, 2018, Vocational Case Manager Kangas prepared a memorandum addressing "the availability of positions not requiring exposure to radiation that would be within the scope of [Dr. Evans'] license to practice medicine . . . and within his qualifications." AR 000332. Mr. Kangas noted that "the claimant's Own Occupation is Diagnostic Radiologist, which includes interventional radiology." Id. Mr. Kangas concluded that Dr. Evans' "reported restriction would not necessarily prevent him from effectively performing work as a radiologist in a non-interventional capacity," since "non-interventional radiology . . . does not generally require exposure to elevated levels of radiation — or radiation beyond what most workers experience at any jobs." Id. Mr. Kangas then identified a number of positions for which Dr. Evans would be qualified to perform that did not involve exposure to increased levels of radiation.

---

[5] As noted above, the ABR began issuing the dual specialty certificate in Interventional Radiology and Diagnostic Radiology in 2017.

8

On December 13, 2018, Standard sent Dr. Evans a letter denying his appeal. The letter confirmed Standard's understanding that Dr. Evans continued to work, but was "not performing interventional radiology procedures." AR 000117. The letter also noted that there did "not appear to be any dispute that Dr. Evans is able to perform all the duties of a diagnostic radiologist whose practice does not include interventional procedures and would not involve increased exposure to radiation." Id. Therefore, Standard emphasized that the "threshold issue" in determining Dr. Evans' eligibility for LTD benefits was "whether his reported restriction would prevent him from performing the Material Duties of his Own Occupation," and that "central to that determination" was the Policy's definition of "Own Occupation." Id. Standard ultimately concluded that "Dr. Evans' Own Occupation is diagnostic radiologist," AR 000119, and that "the information in the claim file does not support that Dr. Evans is unable to perform the Material Duties of his Own Occupation," AR 000122. Accordingly, Standard affirmed the denial of his claim for LTD benefits.

In its final decision, Standard provided a detailed explanation for its occupational determination. After reciting the applicable Policy language, Standard observed as follows:

> In 1993, Dr. Evans obtained a lifetime board-certification from the American Board of Radiology in Diagnostic Radiology – General. Dr. Evans became insured under the Group Policy in 2005. At that time, he remained board-certified in Diagnostic Radiology. He maintained that board-certification at the time he claimed Disability in November 2017.
>
> At the time Dr. Evans claimed Disability, the American Board of Medical Specialties recognized separate primary medical specialties of Diagnostic Radiology and Interventional Radiology (having established the primary medical specialty of Interventional Radiology in 2012). There is no indication or contention that Dr. Evans has ever been board certified in the primary medical specialty of Interventional Radiology.

> Information in the claim file supports that well over 60% of Dr. Evans' professional charges during the 24 months prior to the date he claimed Disability were associated with interventional radiology procedures. There is no dispute about the fact that Dr. Evans' service fees were earned performing procedures that would fall within the specialty of interventional radiology. However, under the terms of the Group Policy, that fact alone does make his Own Occupation interventional radiology. Rather, the Definition of Disability makes clear that, in order for a physician's Own Occupation to be a specific specialty or sub-specialty, they must be board-certified in that specialty or subspecialty.

AR 000119–120.

Standard went on to address the particular points raised on appeal. Standard first explained how it would have viewed Dr. Evans' "Own Occupation" prior to 2012, when, according to Dr. Evans' submissions, Interventional Radiology was recognized as a primary specialty. Standard noted that "at the time Dr. Evans obtained his board certification in Diagnostic Radiology – General, that primary specialty included interventional radiology." AR 000120. In other words, "Interventional Radiology was not separately recognized for board certification" at that time. Id. "Therefore, had Dr. Evans claimed Disability prior to 2012, his Own Occupation would clearly have been Diagnostic Radiology, which included interventional radiology." Id. Standard emphasized that it "would have recognized his board certification and his interventional procedures would have been within that board certification and accounted for at least 60% of his gross professional service fee income." Id.

The letter then explained that Standard's analysis and conclusion would remain the same despite Dr. Evans' assertion that Interventional Radiology was elevated to a primary medical specialty in 2012:

> We find it reasonable to administer the Group Policy in a manner that would not result in a broadening of the scope of Dr. Evans' Own Occupation based on the American Board of Medical Specialties'

decision to change interventional radiology from a sub-specialty of Diagnostic Radiology to a primary medical specialty. Rather, we will continue to consider his professional service fees as being earned within his board certification of Diagnostic Radiology.

The establishment of a new primary medical specialty board certification in Interventional Radiology, and Dr. Evans' lack of board certification in that specialty, will not result in the broadening of his Own Occupation to the scope of his license to practice medicine. Rather, his Own Occupation will remain the scope of his board certification in Diagnostic Radiology, which includes interventional radiology.

AR 000120–121

Standard refused to narrow Dr. Evans' Own Occupation to Interventional Radiology alone, because he was not board certified in that particular specialty:

> You contend that Dr. Evans' claim should be evaluated with the understanding that his Own Occupation is that of Interventional Radiologist. The basis for your contention is that Dr. Evans is board certified in "Diagnostic Radiology, which includes Interventional Radiology" and over 60% of his professional charges were associated with interventional radiology. As outlined above, we accept both of those facts. However, those facts do not lead us to a conclusion that Dr. Evans' Own Occupation is that of Interventional Radiologist. Rather as outlined above, it allows us to accept his Own Occupation to be "the one general or sub-specialty in which [he is] board certified to practice." The one general specialty is "Diagnostic Radiology, which includes Interventional Radiology."
>
> The fact that Dr. Evans' board certification "<u>includes</u> Interventional Radiology" does not narrow his board certification to that specialty.
>
> . . .
>
> The terms of the Group Policy are clear and intended to provide a bright line (board-certified or not) to reduce ambiguity regarding whether a claimant's Own Occupation is a particular specialty or subspecialty. Because Dr. Evans was not board-certified in Interventional Radiology, his Own Occupation cannot be the specialty of interventional radiology.

AR 000121 (emphasis in original).

Standard went on to explain that there was no evidence that "Dr. Evans is unable to perform the Material Duties of a physician practicing within the board certification of Diagnostic Radiology, which includes interventional radiology." AR 000122. Based on the information provided by the Vocational Case Manager, Standard determined that "Dr. Evans' reported restriction from exposure to radiation is compatible with working as a non-interventional radiologist or teleradiologist," that "[s]uch radiology positions exist in significant numbers," and that "Dr. Evans is qualified to perform the Material Duties of such positions." Id. Standard therefore found that "the information in the claim file does not support that Dr. Evans is unable to perform the Material Duties of his Own Occupation." Id. Accordingly, Standard concluded that Dr. Evans "does not meet the Definition of Disability." Id.

Having exhausted his administrative remedies, Dr. Evans filed the instant action on January 29, 2019. The parties subsequently filed cross-motions for summary judgment. The motions have been fully briefed and argued, and the matter is ripe for review.

## Standard of Review

Dr. Evans seeks judicial review of the denial of his claim for LTD benefits pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). This provision authorizes a plan participant to bring a "civil action . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

The standard of judicial review under § 1132(a)(1)(B) "turns on whether the benefit plan at issue vests the administrator with discretionary authority." Helton v. AT&T Inc., 709 F.3d 343, 351 (4th Cir. 2013) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). If the benefit plan "vests with the plan administrator the discretionary authority to make eligibility

determinations for beneficiaries, a reviewing court evaluates the plan administrator's decision for abuse of discretion." Id. (internal quotation marks and citation omitted). "If a plan does not give the administrator discretionary authority, a district court reviews the coverage determination de novo." Id. Although "no specific words or phrases are required to confer discretion, . . . a grant of discretionary authority must be clear." Cosey v. Prudential Ins. Co. of Am., 735 F.3d 161, 165 (4th Cir. 2013).

In this case, the Policy grants Standard "full and exclusive authority" to manage the Policy, administer claims, interpret the Policy, and resolve all questions arising in the administration, interpretation, and application of the Policy. AR 000036. This authority includes "[t]he right to determine . . . [e]ligibility for insurance" and "[e]ntitlement to benefits." Id. Under existing caselaw, such language is clearly sufficient to confer discretion on Standard, the plan administrator. See Donlick v. Std. Ins. Co., 726 F. App'x 12, 14–15 (2d Cir. 2018) (holding that identical policy language conferred discretion); Dutkewych v. Std. Ins. Co., 781 F.3d 623, 626, 633 (1st Cir. 2015) (same); Hankins v. Std. Ins. Co., 677 F.3d 830, 835 (8th Cir. 2012) (same); McCready v. Std. Ins. Co., 417 F. Supp. 2d 684, 696 (D. Md. 2006) (same). Accordingly, the court must review Standard's decision "only for abuse of discretion." Fortier v. Principal Life Ins. Co., 666 F.3d 231, 235 (4th Cir. 2012).

Under the abuse of discretion standard, the court "will not disturb a plan administrator's decision if the decision is reasonable, even if [the court] would have come to a contrary conclusion independently." Williams v. Metro. Life Ins. Co., 609 F.3d 622, 629 (4th Cir. 2010). Thus, the court may not substitute its own judgment for that of the plan administrator. Id. "At its immovable core, the abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the court does not reverse merely because

13

it would have come to a different result in the first instance." Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 321 (4th Cir. 2008).

"To be held reasonable, an administrator's decision must result from a deliberate, principled reasoning process and be supported by substantial evidence." Williams, 609 F.3d at 629 (internal quotation marks and citation omitted). Substantial evidence is that "which a reasoning mind would accept as sufficient to support a particular conclusion." DuPerry v. Life Ins. Co. of N. Am., 632 F.3d 860, 869 (4th Cir. 2011). It consists of "more than a scintilla but less than a preponderance." Newport News Shipbuilding & Dry Dock Co. v. Cherry, 326 F.3d 449, 452 (4th Cir. 2003) (internal quotation marks omitted).

The United States Court of Appeals for the Fourth Circuit has identified a number of nonexclusive factors that a court may consider in reviewing a plan administrator's decision for reasonableness. See Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 342–43 (4th Cir. 2000). The factors include:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Id. Not all factors are relevant in every case, and express discussion of each factor is unnecessary. Helton, 709 F.3d at 357.

## **Discussion**

In this case, the parties' dispute centers on the Policy's Own Occupation provision.[6] As noted above, the Policy defines a medical doctor's Own Occupation as follows:

> [I]f your Own Occupation is medical doctor . . . , we will consider your Own Occupation to be the one general or sub-specialty in which you are board certified to practice for which there is a specialty or sub-specialty recognized by the American Board of Medical Specialties . . . provided you have earned at least 60% of your gross professional service fee income in your specialty or sub-specialty during the 24 months immediately before you become Disabled. If the sub-specialty in you which are practicing is not recognized by the American Board of Medical Specialties . . . you will be considered practicing in the general specialty category.

AR 000017–18. Standard applied this definition to conclude that Dr. Evans' Own Occupation is Diagnostic Radiology—the one general specialty in which Dr. Evans is certified by the ABR. Dr. Evans, applying the same definition, argues that his Own Occupation is Interventional Radiology, even though he does not have a specialty or subspecialty certificate in that area of practice. See Pl.'s Reply Br. 5, ECF No. 23 ("As long as Dr. Evans holds an ABMS certification, and Interventional Radiology is a recognized specialty or subspecialty, and Dr. Evans earned 60% of his income in that specialty or subspecialty, . . . that becomes his Own Occupation.").

In the court's opinion, the resolution of the parties' dispute turns on the applicable standard of review. Although the court may interpret terms de novo when an ERISA plan does not vest discretionary authority with the plan administrator, the court may not do in a case such as this, which is reviewed for abuse of discretion. Hooper v. UnitedHealthcare Ins. Co., 694 F. App'x 902, 910 (4th Cir. 2017). Under this standard, the question before the court is whether Standard's interpretation of the Own Occupation provision was "unreasonable or unprincipled," not whether

---

[6] During oral argument and in his written submissions, Dr. Evans made clear that the single issue in dispute is whether Standard unreasonably interpreted and applied the Policy's Own Occupation provision. See, e.g., Pl.'s Br. Supp. Summ. J. 28, ECF No. 19 ("Plaintiff . . . is entitled to no benefit under the policy until he has an income loss, but he is entitled to a declaration either that Standard erred (under a de novo standard) or abused its discretion (under an abuse of discretion standard) in . . . determining his occupation to be that of Diagnostic Radiologist . . . .").

this court believes that the provision could be interpreted differently or in a more reasonable manner. Id.; see also Grabowski v. Hartford Life & Accident Ins. Co., 747 F. App'x 923, 926 (4th Cir. 2018) ("Under the abuse of discretion standard, . . . Hartford only had to offer a reasonable, and not the most reasonable, interpretation of plan terms."). "'The dispositive principle remains that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace [it] with an interpretation of their own—and therefore cannot disturb as an abuse of discretion the challenged benefits determination.'" Hooper, 694 F. App'x at 910 (alteration in original) (quoting de Nobel v. Vitro Corp., 885 F.2d 1180, 1188 (4th Cir. 1989)).

In this case, Standard interpreted the provision at issue to require board certification in a particular specialty or subspecialty, in order for that specialty or subspecialty to qualify as a medical doctor's Own Occupation. In other words, under Standard's interpretation of the Own Occupation provision, "a claimant's board certification defines his occupation, as long as the claimant was earning at least 60% of his gross professional service fee within that specialty [or subspecialty] during the preceding 24 months." Def.'s Br. Supp. Summ. J. 19, ECF No. 22.

After carefully considering the language at issue and the parties' arguments, the court concludes that Standard did not abuse its discretion in interpreting the Own Occupation provision. Although Dr. Evans strenuously argues that it is enough for a board-certified physician to practice a specialty or subspecialty recognized by the ABMS, he has not convinced the court that Standard's differing interpretation is unreasonable or unprincipled. At most, Dr. Evans' argument supports the conclusion that the Own Occupation provision is ambiguous. He has not demonstrated that Standard resolved the ambiguity unreasonably.

In short, the court is satisfied that the operative language can be reasonably interpreted to

require that a physician be board certified in a particular ABMS-recognized specialty or subspecialty in order for that specialty or subspecialty to qualify as the physician's Own Occupation. This interpretation does not clearly conflict with the applicable Policy language or alter the terms of the Policy. To the contrary, the court believes that it is reasonably supported by the plain language of the Own Occupation Provision. See AR 000017–18 ("[W]e will consider your Own Occupation to be <u>the one general or sub-specialty in which you are board certified to practice</u> for which there is a specialty or sub-specialty recognized by the [ABMS] . . . .") (emphasis added). Because Standard has full and exclusive authority to resolve all questions arising in the interpretation of the Policy, the court will "respect its reasonable interpretation of the language" at issue. Fortier, 666 F.3d at 239 (holding that an administrator's interpretation was a "reasonable solution to an interpretative dilemma" even though it likely rendered portions of a definition "repetitive and superfluous").

Having determined that Standard reasonably interpreted the Policy's Own Occupation provision, the court also concludes that Standard did not abuse its discretion in identifying Dr. Evans' Own Occupation. Although more than 60% of Dr. Evans' professional charges during the preceding 24-month period were associated with interventional procedures, that is not enough to reach Dr. Evans' desired result. Critically, the record is devoid of any evidence establishing that Dr. Evans has ever held a specialty or subspecialty certificate in Interventional Radiology. Instead, Dr. Evans received a certificate in Diagnostic Radiology from the ABR, and he remained board certified in Diagnostic Radiology at the time he applied for LTD benefits.

The record indicates that Standard fully and adequately considered the verification form that Dr. Evans obtained from the ABR, which confirms that Dr. Evans "was certified June 10, 1993 in Diagnostic Radiology." AR 000192. Although the verification form contains a notation

17

indicating that Dr. Evans' certificate in Diagnostic Radiology "includes Interventional Radiology," Standard reasonably concluded that this notation does not narrow his board certification to that specialty or subspecialty. Instead, it merely clarifies that the performance of interventional procedures fell within the scope of the Diagnostic Radiology certificate issued by the ABR in 1993. As noted above, Interventional Radiology was not formally recognized for board certification until after Dr. Evans was certified by the ABR, and there is no evidence that Dr. Evans subsequently received a subspecialty certificate in Vascular and Interventional Radiology or a new specialty certificate in Interventional Radiology and Diagnostic Radiology.

Standard also reasonably determined that the mere fact that Interventional Radiology has since been recognized for board certification by the ABR did not alter the result in Dr. Evans' case. Standard explained that "[t]he establishment of a new primary medical specialty board certification in Interventional Radiology, and Dr. Evans' lack of board certification in that specialty, will not result in the broadening of his Own Occupation." AR 000121. Instead, Standard rationally concluded that Dr. Evans' "Own Occupation will remain the scope of his board certification in Diagnostic Radiology." Id. In other words, Dr. Evans' existing certificate controls. Because that certificate is in Diagnostic Radiology, rather than Interventional Radiology and Diagnostic Radiology, Standard did not abuse its discretion in identifying Dr. Evans' Own Occupation under the Policy. Standard reasonably determined that Dr. Evans' Own Occupation is the one specialty in which he is board certified: Diagnostic Radiology.

In light of this determination, Standard also reasonably concluded that Dr. Evans is not precluded from performing the material duties of his Own Occupation. Indeed, it is undisputed that Dr. Evans has the physical capacity to work as a non-interventional radiologist, and that he continues to practice within his board certification of Diagnostic Radiology. See AR 000142

18

(reporting that Dr. Evans is "currently working in a [radiology] role that does not involve exposure to radiation"); see also Pl.'s Reply Br. 6 (noting that Dr. Evans remains employed as a "board certified radiologist" but "cannot work as an interventional radiologist") (emphasis added).

Finally, the court must reject Dr. Evans' argument that a conflict of interest tainted Standard's assessment of his Own Occupation. It is undisputed that a structural conflict exists because Standard "both evaluates claims for benefits and pays benefits claims." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 112 (2008). However, a conflict of interest is "but one among many factors in determining the reasonableness of the [plan administrator's] discretionary determination." Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 359 (4th Cir. 2008); see also Piepenhagen v. Old Dominion Freight Line, Inc., 640 F. Supp. 2d 778, 785 (W.D. Va. 2009) ("[E]ven if the administrator is acting under a conflict of interest," the court "must continue to apply a deferential standard of review while weighing the conflict as a factor in determining whether there is an abuse of discretion.") (internal quotation marks and citation omitted). For the reasons discussed above, the court concludes that Standard reasonably interpreted and applied the Policy's Own Occupation provision in reviewing and denying Dr. Evans' claim for LTD benefits. The court is not persuaded that the presence of a structural conflict improperly influenced Standard's decision. See Fortier, 666 F.3d at 236 n.1 ("Absent any evidence in the record that Principal Life's denial of benefits was a product of its financial interest, rather than its genuine and reasoned judgment, we can hardly place determinative weight on that factor in reviewing the administrator's decision.").

In sum, the court finds no abuse of discretion in the denial of Dr. Evans' claim for LTD benefits. While Standard's reading of the Policy may not be the only possible interpretation, "it is nonetheless, if not the best, at least a reasonable solution to an interpretative dilemma." Id. at

239. Accordingly, Standard is entitled to summary judgment.

## Conclusion

For the reasons stated, the court will grant Standard's motion for summary judgment and deny Dr. Evans' motion for summary judgment. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 26th day of March, 2020.

_____
Senior United States District Judge